RESOLUTION TRUST CORPORATION, as Receiver for Midwest Federal Savings Bank of Minot, Plaintiff and Appellee,

v.

DICKINSON ECONO–STORAGE, a general partnership; Roger J. Pelton, Raymond Pelton, and Duane U. Brekke, Defendants and Appellants.

Civ. No. 900422.

Supreme Court of North Dakota.

July 31, 1991.

James D. Geyer (argued), of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiff and appellee.

Eugene F. Buresh (argued), of Freed, Dynes, Reichert, Buresh & Herauf, P.C., Dickinson, for defendants and appellants.

LEVINE, Justice.

Dickinson Econo–Storage, a partnership, appeals from a district court summary judgment awarding Resolution Trust Corporation ["RTC"] $25,191.09 plus interest. We affirm.

Econo–Storage owned Lots 3 and 4, Block 2A, Kilwein's 2nd Subdivision, Stark County, North Dakota. In 1980, Econo–Storage granted a mortgage on the West 80 feet of Lot 3 to Midwest Federal Savings Bank of Minot ["Midwest Federal"]. Econo–Storage defaulted and Midwest Federal obtained a judgment of foreclosure on March 20, 1986. During the redemption period, Econo–Storage conveyed the West 80 feet of Lot 3 to Midwest Federal.

Econo–Storage had separate mortgages with different mortgagees on the other portions of Lots 3 and 4. The properties were not, however, apportioned for tax purposes with the county treasurer and no arrangements had been made between the parties for apportionment of taxes. In August of 1986, Midwest Federal paid Stark County $30,703.55 for delinquent real estate taxes on Lots 3 and 4 for years 1983 through 1986. Of that amount, $5,512.46 was attributable to the West 80 feet of Lot 3; the remaining $25,191.09 was attributable to the remaining portions of Lots 3 and 4.

Midwest Federal commenced this action against Econo–Storage seeking recovery of the taxes paid on Econo–Storage's property. Counsel for the parties reached an oral agreement to settle the case but Econo–Storage refused to sign the agreement. The trial court granted Midwest Federal's motion for summary judgment based upon the settlement, concluding that counsel had the authority to bind Econo–Storage to the agreement. We reversed that summary judgment on appeal. *Midwest Federal Savings Bank v. Dickinson Econo–Storage,* 450 N.W.2d 418 (N.D.1990).

Midwest Federal was declared insolvent and RTC was substituted as plaintiff in this action. RTC moved for summary judgment, asserting that Section 57–45–01, N.D.C.C., allowed it to recover the taxes that Midwest Federal had paid on Econo–Storage's property. The trial court granted summary judgment and Econo–Storage appealed.

The dispositive issue on appeal is whether, under the circumstances of this case, Section 57–45–01 authorizes recovery from Econo–Storage of the amount of the taxes attributable to the property never mortgaged to Midwest Federal. Section 57–45–01 provides:

> "*Taxes paid by occupant or tenant.* If any tax on any real estate is paid by or collected from any occupant or tenant or any other person, and such tax, by agreement or otherwise, ought to have been paid by the owner, lessor, or some other party in interest, such occupant, tenant, or other person may recover by action the amount which such owner, lessor, or party in interest ought to have paid, with interest thereon at the rate of six percent per annum, or he may retain the same for any rent due or accruing from him to such owner or lessor for real estate on which such tax is paid, and the same, until paid, shall constitute a lien upon said real estate."

RTC argues that the language "any other person" must be read literally, so that *any* person could pay the real estate taxes on any piece of property and receive a money judgment against the owner or other responsible party. The trial court apparently agreed with that interpretation. Al-

though we agree with the trial court's result, we do not adopt the broad interpretation of the statute urged by RTC and adopted by the trial court.

The interpretation of a statute is a question of law, fully reviewable by this court. *Kim–Go v. J.P. Furlong Enterprises, Inc.,* 460 N.W.2d 694, 696 (N.D.1990); *Keepseagle v. Backes,* 454 N.W.2d 312, 315 (N.D.1990). The primary purpose of statutory construction is to ascertain the intent of the legislature. *Kim–Go, supra,* 460 N.W.2d at 694. We must presume that the legislature did not intend absurd and ludicrous results or unjust consequences. *Witthauer v. Burkhart Roentgen, Inc.,* 467 N.W.2d 439, 445 (N.D.1991).

Interpretation of Section 57–45–01 in the broad manner suggested by RTC leads to absurd and ludicrous results. Under RTC's interpretation, *any* person, with or without an interest in the property, could voluntarily pay the delinquent real estate taxes and would automatically be entitled to a personal money judgment against the owner of the property. At oral argument to this court, various scenarios were suggested through which local taxing authorities could thus use Section 57–45–01 to accomplish indirectly what they cannot do directly and surreptitiously convert their in rem rights against tax-delinquent property into a personal money judgment against the owner. We do not believe that the legislature intended that absurd and illogical result.

To avoid the illogical result which follows from the interpretation suggested by RTC, our construction of the statute is guided by the rule of *ejusdem generis.* The rule of *ejusdem generis* states that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects specifically enumerated. *District One Republican Committee v. District One Democrat Committee,* 466 N.W.2d 820, 832 n. 4 (N.D.1991); 2A Sutherland, Statutory Construction § 47.17 (4th ed. 1984). Stated another way, " '[u]nder the principle of ejusdem generis', general words following particular and specific words are not given

their natural and ordinary sense, standing alone, but are confined to persons and things of the same kind or genus as those enumerated.'" *Aanenson v. Bastien,* 438 N.W.2d 151, 156 (N.D.1989) (*quoting Savelkoul v. Board of County Commissioners,* 96 N.W.2d 394, 398 (N.D.1959)).

■ *Ejusdem generis* is a specific application of the general rule of statutory construction that, if possible, each word of a statute is to be given effect:

"The doctrine of ejusdem generis is an attempt to reconcile an incompatibility between specific and general words so that all words in a statute and other legal instruments can be given effect, all parts of a statute can be construed together and no words will be superfluous. If the general words are given their full and natural meaning, they would include the objects designated by the specific words, making the latter superfluous. If, on the other hand, the series of specific words is given its full and natural meaning, the general words are partially redundant. The rule 'accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.'

"The resolution of this conflict by allowing the specific words to identify the class and by restricting the meaning of general words to things within the class is justified on the ground that had the legislature intended the general words to be used in their unrestricted sense, it would have made no mention of the par-

ticular words." 2A Sutherland, Statutory Construction § 47.17 at p. 166 [footnotes omitted].

■ The language at issue in this case is "any occupant or tenant or any other person." In applying *ejusdem generis* to the word "other," the court in *Gaustad v. Nygaard,* 64 N.D. 785, 788, 256 N.W. 230, 231–232 (1934) (*quoting Camden Safe Deposit & Trust Co. v. Cape May Illuminating Co.,* 102 N.J.Eq. 351, 140 A. 672, 673 (Ct.Ch.1928)), stated that "'[w]here a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that persons or things therein comprised may be read as ejusdem generis with, and not of quality superior to or different from, those specifically enumerated.'"

Thus, we must read "any other person" in Section 57–45–01 as referring to other persons of the same general class as occupants and tenants. In so doing, we must keep in mind the admonition that in applying the rule of *ejusdem generis* our primary purpose is always to carry out the intent of the legislature. *See Aanenson v. Bastien, supra,* 438 N.W.2d at 156. Applying the rule of *ejusdem generis* in this case, we construe the statute to apply to occupants, tenants, or other persons with some interest in or connection with the subject property.[1] By thus restricting the statute's scope, strangers to the property are prohibited from seeking the remedies accorded by the statute and absurd results are avoided.

■ We further conclude that Midwest Federal falls within the class of "other

---

1. We note that Section 57–45–02, N.D.C.C., provides specific remedies to a mortgagee or other lienor who pays taxes on the subject property:

"*57–45–02. Taxes paid by mortgagees or others having liens.* Any person who has a lien by mortgage or otherwise upon any real property that has been sold for taxes or on which the taxes have not been paid, may redeem from such sale, or may pay such taxes and the interest, penalty, and costs thereon, and the receipt of the county treasurer or the certificate of redemption, as the case may be, shall constitute an additional lien on such

land to the amount therein stated. The amount so paid and the interest thereon at the rate specified in the mortgage or other instrument, shall be collected with, as part of, and in the same manner as, the amount secured by the original lien."

At the time Midwest Federal paid the taxes, the West 80 feet of Lot 3 had been deeded to Midwest Federal and it owned and occupied that portion of the property. Midwest Federal never had a mortgage on the remaining portions of Lots 3 and 4, upon which the disputed taxes were paid. Midwest Federal therefore did

persons" intended to be protected by the statute. All of Lots 3 and 4 were one tract for tax purposes. At the time it paid the taxes, Midwest Federal owned and occupied a portion of that tract. Under these circumstances, Midwest Federal was an "other person" with an interest in the subject property, and accordingly fell within the protected class of the statute.

■ Econo–Storage asserts that, even if Midwest Federal was an "other person" under Section 57–45–01, the statute authorizes only a lien against the property, not a personal money judgment against the owners. This argument ignores the plain language of the statute, which provides that any occupant, tenant, or other person who pays the tax on any real estate "may recover by action the amount" which the owner ought to have paid. The statute then uses the disjunctive "or," and the second clause authorizes the occupant, tenant, or other person to withhold rents to recover the taxes paid, and provides that the amount of taxes paid shall constitute a lien upon the property. We do not construe that last phrase of the statute, providing for the lien, as somehow negating the clear language which authorizes an action to recover the amount paid.

■ Econo–Storage also asserts that summary judgment was not proper because a material issue of fact exists regarding Midwest Federal's knowledge and intent when it paid the delinquent taxes on Lots 3 and 4. Econo–Storage argues that Midwest Federal was told by the county treasurer's office that the $30,703.55 represented taxes due on all of Lots 3 and 4, not just the West 80 feet of Lot 3 owned by Midwest Federal. Thus, Econo–Storage asserts, Midwest Federal paid the taxes as a volunteer, and is not entitled to recover. Midwest Federal, and now RTC, have maintained that Midwest Federal believed the full $30,703.55 was attributable to the West 80 feet of Lot 3, that they paid the full amount based upon this mistaken belief, and that they only learned the true facts at some later date.

Even when factual disputes exist, summary judgment is nevertheless appropriate where the law is such that resolution of the factual disputes will not change the result. *Production Credit Association of Fargo v. Ista*, 451 N.W.2d 118, 120 (N.D.1990). Section 57–45–01 makes no distinction between persons who pay the tax by mistake and those who pay it voluntarily with full knowledge of the circumstances. The statute applies in either instance, and the payor is authorized to bring an action to recover the amount of the tax against the property owner. Resolution of this factual issue would have no bearing upon the result in this case.

The summary judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

not pay the disputed taxes as a mortgagee or lienor and accordingly is not precluded from seeking a personal judgment by Section 57–45–

02, which limits reimbursement for payment of taxes by a mortgagee to a lien on the property.