James CHRISTIANSON, Plaintiff
and Appellant,

v.

CITY OF BISMARCK, North Dakota,
Defendant and Appellee.

Civ. No. 910151.

Supreme Court of North Dakota.

Oct. 7, 1991.

Irvin B. Nodland of Nodland, Tharaldson
& Dickson, Bismarck, for plaintiff and appellant.

Charles C. Whitman, City Atty., Bismarck, for defendant and appellee.

LEVINE, Justice.

James Christianson appeals from a district court order denying his application for a writ of mandamus that would have required the Bismarck City Commission to act upon a petition for a proposed ordinance as required under section 40–12–06, NDCC.[1] We reverse and remand.

---

1. Section 40–12–06, NDCC, states:

"After receiving the petition for the initiation of a proposed ordinance, the governing body of the municipality shall:

"1. Pass the ordinance without alteration within twenty days after the attachment of the auditor's certificate to the accompanying petition;

"2. Call a special election, unless a general city election is fixed within ninety days thereafter, and submit to the vote of the qualified electors of the municipality the initiated ordinance without alteration; or

"3. If the petition is signed by not less than twenty-five percent of the qualified electors as defined in section 40–12–02, pass the ordi-

Christianson is one of several residents of the city of Bismarck who circulated a petition to initiate an ordinance relating to the extension of Washington Street that would require no separation of the elevation of road grades at the intersection of Washington Street and Main Avenue.[2] After the City Auditor certified that the petition contained the requisite number of valid signatures, the petition was presented to the Bismarck City Commission.

The City Commission, on advice of counsel, unanimously voted to deny the petition because the design of a street was an administrative matter not subject to initiative. Christianson then requested a writ of mandamus from the district court ordering the City Commission "to comply with the provisions of Section 40–12–06, N.D.C.C." The district court declined to issue the writ, reasoning that only legislative matters, not administrative ones, were eligible for the initiative process and that the selection of the road grade was administrative.[3] The district court then dismissed the action. Christianson appealed.

■ A writ of mandamus may be issued by the Supreme Court or district courts of North Dakota "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." NDCC § 32–34–01. An applicant for a writ of mandamus must demonstrate both a clear legal entitlement to the performance of the particular act sought to be compelled and no other plain, speedy and adequate remedy in the ordinary course of law. NDCC §§ 32–34–01, 32–34–02. *E.g., N.D. Council of School Adm'rs v. Sinner,* 458 N.W.2d 280 (N.D.1990); *Old Broadway Corp. v. Backes,* 450 N.W.2d 734 (N.D.1990). Issuance of the writ is discretionary so that on appeal, this court will reverse a denial of an application for a writ of mandamus only if the trial court has abused its discretion. *See McCallum v. City Com'rs of City of Bismarck,* 393 N.W.2d 263 (N.D.1986). A trial court abuses its discretion when it misinterprets or misapplies the law. *Heller v. Heller,* 367 N.W.2d 179 (N.D.1985).

Christianson argues that sections 40–12–06, *see* n. 1, 40–12–02 and 40–39–03, NDCC, give him a clear legal right to have the proposed ordinance enacted by the city commissioners or referred to the people for a vote. The city urges us to engraft an exception to the authority bestowed by these statutes and rule that only legislative matters, not administrative matters, are subject to the initiative procedure set forth in chapter 40–12, NDCC. Because we believe the City's request is one not countenanced by the statutes in question, we reject it.

Section 40–12–02, NDCC, provides:

"Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. In this connection an ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to a vote of the people.

"The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it." McQuillin, *supra* at 266.

---

nance without change within twenty days after the filing of the petition or submit the initiated ordinance at the next general municipal election, if the election occurs not more than thirty days after the city auditor's certificate of sufficiency is attached to the petition, and if no general municipal election is to be held within thirty days after the city auditor's certificate of sufficiency is attached to the petition, it shall call a special election."

2. The Bismarck City Commission had earlier voted by motion to pursue an alternate plan which would eliminate the intersection of Washington Street and Main Avenue.

3. "The power of initiative or referendum usually is restricted to legislative ordinances, resolutions, or measures, and is not extended to executive or administrative action." 5 McQuillin Mun. Corp § 16.55 (3rd Ed.1989), 265.

McQuillin points out the distinction between administrative and legislative matters:

"Any proposed ordinance may be submitted to the governing body of the municipality by a petition signed by qualified electors thereof equal in number to fifteen percent of the votes cast for all candidates for the executive officer at the preceding regular municipal election. The petition shall be filed in the city auditor's office, and shall contain a request that the ordinance set out in the petition be submitted to a vote of the qualified electors of the city if it is not passed by the governing body of the municipality."

Section 40–39–03, NDCC, says:

"The governing body, by ordinance, may establish the grade of all streets, alleys, and sidewalks in the municipality as the convenience of its inhabitants may require. A record of the grades, together with a profile thereof, shall be kept in the office of the city engineer, or of the city auditor, if the city has no engineer. If the municipality changes the grade of any street after it has been established, it shall be liable to the abutting property owners for any damage they may sustain by reason of any permanent improvements made by them to conform to the grade as first established."

■ Several rules of statutory interpretation guide our analysis. The interpretation of a statute is a question of law, fully reviewable by this court. *Resolution Trust Corp. v. Dickinson Econo–Storage*, 474 N.W.2d 50 (N.D.1991). In interpreting statutes, we seek to fulfill the object and intent of the legislature. *E.g., Ebach v. Ralston*, 469 N.W.2d 801 (N.D.1990). To discern legislative intent, we look at and compare every relevant section and subsection as part of a whole. *Id.* Words in a statute are to be understood in their ordinary sense. NDCC § 1–02–02.

■ On its face, section 40–12–02, NDCC, authorizes "any" ordinance to be submitted to the governing body of the municipality, subject to certain procedural requirements not at issue here. The question is: What meaning is to be given to the word "any" in the context of this statute?

We have previously acknowledged that the word "any" is a general one subject to different meanings depending on the context and subject matter of the statute in which it is used. *501 DeMers, Inc. v. Fink*, 148 N.W.2d 820 (N.D.1967). However, ordinarily, the word "any" in a statute means "all" or "every" and suggests a broad and expansive meaning. *State v. Zueger*, 459 N.W.2d 235 (N.D.1990). The subject matter of this statute, interpreted in the context of the chapter in which it is placed, makes an expansive reading of section 40–12–02, NDCC, particularly appropriate.

■ The legislature intended to place the ultimate power of initiative in the hands of the people. It is true that Article III, § 1, N.D. Const., which reserves the right of the people to enact laws by initiative, does not reserve the power to initiate local ordinances. *Pelkey v. City of Fargo*, 453 N.W.2d 801 (N.D.1990). But, section 40–12–01, NDCC, et seq., expressly grant the power to city voters to initiate municipal ordinances. The breadth of that power is limited only by procedural requirements that the petition and petitioners must meet. *See* NDCC § 40–12–02 (percentage of signatures necessary, place of filing petition, necessity of request), § 40–12–03 (only qualified electors may sign petition, proper address, etc., of petitioner), § 40–12–04 (oath validating signatures). We do not discern any legislative intent from the language of chapter 40–12 to limit the kind of ordinance that may be proposed to one that deals only with legislative matters rather than administrative matters. Nowhere is such a distinction made and we are reluctant to create one absent direction from the legislature.

Christianson acknowledges that while the word "any," in section 40–12–02, NDCC, should be read expansively, it is not without limitation. The proposed ordinance must be one that the city governing body is itself authorized to enact. Here, the City is authorized to establish road grade either by resolution under section

40–22–11, NDCC,[4] or by ordinance under section 40–39–03, *supra.* The City thus could have proceeded by ordinance. That it did not does not deprive the people from exercising their right to initiate the proposed ordinance.

In urging our adoption of an administrative/legislative dichotomy, the City relies on a host of Attorney General opinions endorsing the concept. *E.g.,* N.D.Op. Att'y.Gen. 06 (1990); N.D.Op.Att'y Gen. 11 (1986). This court grants respectful attention to opinions by the Attorney General and will follow them if they are persuasive. *Holmgren v. N.D. Workers Comp. Bur.,* 455 N.W.2d 200 (N.D.1990). However, Attorney General opinions are not binding upon this court and we will not follow them if they are inconsistent with the statutory interpretation that the court deems reasonable. *See Ficek v. International Bro. of Boilermakers, Etc.,* 219 N.W.2d 860 (N.D.1974). Because we have interpreted section 40–12–02, NDCC, to authorize the initiation of all proposed ordinances that the city itself is authorized to pass, and because section 40–12–06, NDCC, limits the options of the city when it receives such a proposed ordinance to either pass the ordinance or submit it to a vote of the electorate, we decline to accept the Attorney General's opinions to the contrary.

We are aware that other courts have determined that only legislative matters are subject to municipal initiative and referendum. *E.g., Heider v. Common Council of City of Wauwatosa,* 37 Wis.2d 466, 155 N.W.2d 17 (1967); *Housing Authority v. Superior Court,* 35 Cal.2d 550, 219 P.2d 457 (1950). *But see Baker v. Jackson,* 372 N.W.2d 142 (S.D.1985); *State v. Summers,* 33 S.D. 40, 144 N.W. 730 (1913). The commonly given reason for such a limitation of initiative and referendum is that "giving a small group of electors the right to demand a vote of the people upon every administrative act of the city council would place municipal government in a straight-jacket and make it impossible for the city's officers to carry on the public business." *Housing Authority,* 219 P.2d at 461. However, we are not aware of, nor has counsel for the City provided, any evidence of abuse of initiative or referendum power by the citizens of North Dakota municipalities. Nor does the language of the statutes which we have construed indicate that the legislature was concerned with potential excesses by the people and acted to reduce that potential by limiting the kind of ordinances that may be initiated.

We conclude that the district court misinterpreted the law in denying Christianson's clear legal right to mandamus and abused its discretion. Accordingly, we reverse and remand with instructions that the district court issue a writ requiring the city commission to comply with section 40–12–06, NDCC, by either passing the proposed ordinance without alteration or calling a special election and submitting the proposed ordinance, without alteration, to the vote of the qualified electorate of Bismarck. To comply with the spirit of the time limits contained within the statute, if the City chooses to pass the ordinance, without alteration, it must take action within twenty days of the issuance of the writ. If the City chooses to submit the proposed ordinance to Bismarck's electorate, it must call a special election within ninety days of the issuance of the writ.[5]

---

**4.** Section 40–22–11, NDCC, reads as follows:

"At any time after receiving the engineer's report required by section 40–22–10, the governing body may direct the engineer to prepare detailed plans and specifications for construction of the improvement. The plans and specifications shall be approved by a resolution of the governing body of the municipality. If the plans and specifications include the establishment of the grade of a street and such grade has not been established previously by ordinance, the resolution approving the plans, specifications, and estimates shall constitute an establishment of the grade."

**5.** Under section 40–12–06(2), NDCC, the City is authorized to place the proposed ordinance on the ballot of the next general election if that election occurs within ninety days of the receipt of the City Auditor's certification. However, according to section 40–21–02, NDCC, the next general election is not scheduled until April of 1992, which places it beyond the ninety-day limitation intended by the legislature.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.