Bernhard ODDEN, Petitioner,

v.

The Honorable James H. O'KEEFE, Presiding Judge, Northeast Judicial District, and the Honorable William A. Neumann, Judge of the District Court, McHenry County, Northeast Judicial District, Respondents.

Civ. No. 890404.

Supreme Court of North Dakota.

Jan. 17, 1990.

Chapman & Chapman, Bismarck, Charles L. Chapman and Michael J. Geiermann, for petitioner.

The Honorable James H. O'Keefe, Presiding Judge, Northeast Judicial District, State of North Dakota; the Honorable William A. Neumann, Judge of the District Court, Northeast Judicial District, State of North Dakota; and McGee, Hankla, Backes & Wheeler, Ltd., Norwest Bank Building, P.O. Box 998, Minot, ND 58702-0998, Donald L. Peterson, for respondents.

PER CURIAM.

The petitioner, Bernhard Odden, requests this court to issue a supervisory writ requiring the Honorable James H. O'Keefe, the Presiding Judge of the Northeast Judicial District, and the Honorable William A. Neumann, a judge in that district, to schedule his civil action for jury trial. The application for a supervisory writ is denied.

Odden's personal injury and wrongful death action was scheduled for a jury trial before Judge Neumann in the Northeast Judicial District on January 29, 1990. By letter, dated December 20, 1989, Judge Neumann informed Odden that his scheduled jury trial was being postponed because Judge O'Keefe had ordered a moratorium on civil jury trials to achieve necessary budget cuts. The moratorium was anticipated to last for the balance of the 1989–1991 biennium. Odden petitioned this court for a supervisory writ.[1]

1. In anticipation of a substantial revenue shortfall the Supreme Court requested the presiding judge of each judicial district to accommodate a 9.1% cut in funding for the remainder of the 1989–1991 biennium. In a meeting of the council of Presiding Judges, held on December 18, 1989, Judge O'Keefe indicated that a reduction of jury expenses would be part of his budget cuts:

"Jury expenses will be cut by 51%—speedy trial would be given on criminal cases and civil cases would be delayed indefinitely."

This court ultimately adopted a budget reduction package for the unified judicial system and forwarded a narrative of the anticipated budget cuts to the Office of Management and Budget, including the following description of anticipated cuts in the operating expense line item for the district courts:

"The major part of reductions in operating expense would center in the cost of juries and indigent defense services. Sharp reductions in District Court travel and law libraries will be implemented. As a result, considerable slowing in the pace of jury trials will result. We would seek to avoid impact on criminal jury trials."

■ The court's authority to issue a supervisory writ is derived from Article VI, § 2 of the North Dakota Constitution. *Lang v. Glaser*, 359 N.W.2d 884 (N.D. 1985). Our power to issue a supervisory writ is discretionary and cannot be invoked as a matter of right. *Minot Daily News et al. v. Holum*, 380 N.W.2d 347 (N.D.1986). Our superintending control over inferior courts is used to prevent injustice in extraordinary cases where no other remedy is adequate or allowed by law. *Minot Daily News et al. v. Holum, supra; Patten v. Green*, 369 N.W.2d 105 (N.D.1985). Although we conclude that Odden is entitled to have the moratorium on his civil jury trial lifted, we believe that he will receive this remedy in the district court without the requested writ.

■ The issue in this case is whether a moratorium on all civil jury trials for the balance of the 1989–1991 biennium, imposed for budgetary reasons, is constitutional.

Article 1, § 13, N.D. Const., provides, in relevant part:

"The right of trial by jury shall be secured to all, and remain inviolate."

The Seventh Amendment of the United States Constitution provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact, tried by a jury, shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

Although the Seventh Amendment is not applicable to state court proceedings under the Fourteenth Amendment [*Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916); *Runia v. Marguth Agency, Inc.*, 437 N.W.2d 45 (Minn.1989)], both our state and the federal constitutional provisions preserve the right to trial by jury in those cases which historically were subject to trial by jury at common law. *Landers v. Goetz*, 264 N.W.2d 459 (N.D.1978).

In *Landers, supra*, 264 N.W.2d at 462, this court compared the scope of the right to a jury trial under both the federal and state constitutions:

"In the State Constitution, it is the right to the essential incidents of trial by jury as it existed in the Territory of Dakota which remains inviolate. *Power v. Williams*, 53 N.D. 54, 205 N.W. 9 (1925); *Smith v. Kunert*, 17 N.D. 120, 115 N.W. 76 (1908). There is no real difference between the Federal constitutional right and the right under Territorial law, since the latter was the same as the right at common law and under the United States Constitution. *Power v. Williams, supra.*"

Both *Landers v. Goetz, supra*, and *Power v. Williams, supra*, indicate that the state and federal constitutional provisions guaranteeing the right to a jury trial in civil actions are similar in scope and protect the same constitutional rights. *See also General Electric Credit Corp. v. Richman*, 338 N.W.2d 814 (N.D.1983) [North Dakota has a high regard for the right to a jury trial in civil cases and has been more liberal than most states in construing that right].

We have found no North Dakota cases dealing with Article I, § 13, N.D. Const., in a context similar to this case and the parties have cited none. However, the Ninth Circuit Court of Appeals has held that a blanket moratorium on civil jury trials, imposed for a lack of adequate funds, violates the Seventh Amendment. *Armster v. United States District Court*, 792 F.2d 1423 (9th Cir.1986). *See also Hobson v. Brennan*, 637 F.Supp. 173 (D.D.C.1986).

In *Armster, supra*, the Administrative Office of the United States District Courts and the Executive Committee of the Judicial Conference advised all of the Federal District Courts that, as a result of a budgeting crisis, a blanket moratorium on the

---

Subsequently, in implementing the budget reductions for his district, Judge O'Keefe imposed a blanket moratorium on civil jury trials for the remainder of the biennium, a period of approximately eighteen months. This petition constitutes the first instance in which this court has been asked to consider the constitutionality of a blanket moratorium on civil jury trials.

civil jury trial system for three and one-half months was required. A group of plaintiffs in civil cases which were pending in the District Court for the Central District of California and for the District of Alaska petitioned for an emergency writ of mandamus to prohibit those two district courts from suspending civil jury trials because of the alleged insufficiency of funds.

The Justice Department noted that the Sixth Amendment guarantees a speedy criminal trial whereas the Seventh Amendment does not guarantee a speedy civil trial and argued that the Seventh Amendment does not guarantee that a civil jury trial must take place at a particular time. In support of its argument, the Justice Department asserted that civil jury trials are frequently postponed and rescheduled for reasons other than lack of funds, including calendar congestion, lack of sufficient number of judges, and the priority accorded to criminal cases. The Justice Department argued that the blanket moratorium therefore did not violate the petitioners' Seventh Amendment rights.

The Court of Appeals rejected the Justice Department's argument, noting that it was not confronted with a good faith discretionary calendaring delay which implicates no Seventh Amendment rights, but with a wholesale non-discretionary suspension of the civil jury trial system and a blanket moratorium on all civil jury trials. Relying on United States Supreme Court caselaw that the right to a jury trial in civil cases under the Seventh Amendment is so fundamental and sacred that any seeming curtailment of that right should be rigorously scrutinized [*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Jacob v. City of New York*, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942); *Dimick v. Schiedt*, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935)], the Court of Appeals concluded that the blanket moratorium on civil jury trials for a significant period of time violated the petitioners' Seventh Amendment rights:

"[T]he availability of constitutional rights does not vary with the rise and fall of account balances in the Treasury. Our basic liberties cannot be offered and withdrawn as 'budget crunches' come and go, nor may they be made contingent on transitory political judgments regarding the advisability of raising or lowering taxes, or on pragmatic or tactical decisions about how to deal with the perennial problem of the national debt. In short, constitutional rights do not turn on the political mood of the moment, the outcome of cost/benefit analyses or the results of economic or fiscal calculations. Rather, our constitutional rights are fixed and immutable, subject to change only in the manner our forefathers established for the making of constitutional amendments. The constitutional mandate that federal courts provide civil litigants with a system of civil jury trials is clear. There is no price tag on the continued existence of that system, or on any other constitutionally-provided right.

\*   \*   \*   \*   \*   \*

"[T]he civil jury trial system may not be suspended for lack of funds. Specifically, we conclude that the seventh amendment right to a civil jury trial is violated when, because of such a suspension, an individual is not afforded, for any significant period of time, a jury trial he would otherwise receive. We do not suggest that a suspension of any duration whatsoever would be constitutional. We need only decide here that a suspension for a significant period is barred by the seventh amendment." *Armster, supra*, 792 F.2d at 1429–1430.

Although the Court of Appeals concluded that a blanket moratorium on civil jury trials for three and one-half months was for a significant period of time and was unconstitutional, it did not issue a writ of mandamus because it was "confident" that the district court judges would "act in light of the principles set forth" in the decision. *Armster, supra*, 792 F.2d at 1431.

We find the rationale of *Armster, supra*, to be persuasive to the extent that it prohibits a blanket moratorium on civil jury trials for a significant period of time. Under the circumstances of this case, we need not decide whether a three and one-half

**710**

month delay of civil jury trials is unconstitutional. We hold only that the Northeast Judicial District's blanket moratorium on civil jury trials, for budgetary purposes, through the balance of the biennium, a period of about eighteen months, is a significant period of time and violates Odden's state constitutional right to a civil jury trial.

We are confident that the judges in the Northeast Judicial District will act in light of the principles set forth in this decision. Consequently, we deny Odden's petition, without prejudice.

The application for a supervisory writ is denied.